Thank you, Your Honors. First of all, this Court requested that at oral argument, the parties It's for the purposes of the tape, could you tell us who you are? I'm Alisa Silvano-Peterson for Appellant. Thank you. And first of all, Your Honors, the Court requested that we discuss at oral argument the issue of whether the Supreme Court case is clearly established federal law. And although it's true that Von Moltke is a plurality decision, the justices are not in disagreement as to the conclusion that in order for there to be a valid waiver of the right to counsel, the defendant must be informed about certain information, including an apprehension of the nature of the charges, the range of allowable punishments, and possible defenses and circumstances in mitigation. And it is the opinion of Justice Black which sets forth this criteria. But also in Justice Frankfurter's opinion, the Court does not disagree with this requirement. The Frankfurter opinion merely elaborates that there was also an invalid plea agreement because there was not proper representation by counsel. But Frankfurter's opinion recognizes that there was an invalid waiver of the right to counsel. And even in the dissent, Justice Burton does not disagree with the criteria set forth by Frankfurter. Justice Black, Justice Burton merely disagrees on the factual circumstances because he stated that the defendant accurately forecasted the general character of her sentence. The defendant accurately forecast? She accurately forecast the general character of her sentence and was concerned primarily with the wish that her sentence be stated. So that's okay. So the disagreement on which the dissenting opinion was based was just a factual disagreement in that the dissent believed that the defendant had the proper information. Ms. Peterson? Yes. What do you have to say in response to the Ninth Circuit's opinion in, I guess it's Arnold versus the United States, which was cited in the Rule 28J letter by your opponent? Well, the Arnold, in the Arnold decision, the Circuit determined that the defendant had the proper information. The language of von Maltke is a directory to the trial courts emphasizing the importance of careful inquiry before a waiver of assistance of counsel is accepted. And even if the court reads von Maltke not as requiring a specific colloquy by the court, it does emphasize the von Maltke holding that there must be a careful inquiry before there is a waiver. And the... Let me see if I can get to the heart of it. Is the problem from your perspective that there was no specific colloquy addressing the potential punishment if the California sentencing enhancements applied as they ultimately were applied? Is that what you're really objecting to? Well, there were... Basically, the objection is that there was no intelligent and knowing waiver, and there were several factors that established that fact. Clearly, there was a colloquy. What I'm trying to understand from your argument is what more should the trial judge have done in your opinion in order to comply with von Maltke in light of our interpretation of what it means in Arnold? And let me be a little more clear about that. I read our decision in Arnold as saying, and I think Judge Thompson actually said so, that von Maltke basically suggests a standard of perfection. In other words, a level of colloquy that we can't really expect in every criminal case. But the question that we have to look at is whether there was essentially enough compliance with the colloquy to establish a knowing and intelligent waiver. And if I understand your argument, I think what you're attacking is your client's misunderstanding of the punishment that he was facing. Am I oversimplifying it? No. There were several different reasons, that being one of them, as to why that establishes there was no knowing and intelligent waiver. And the first was that the waiver was not unequivocal, because when asked, if it was his, when the defendant was asked whether it was his or not, referring to the public defender, can handle the case. Then when the court continued to press the defendant, he stated, I can go pro per. That is very equivocal. Yes, but in the opening brief, I've said authority, which shows that just a waiver form is not sufficient. But we have more than that here, don't we? We have a colloquy and a written waiver form, and we have in the record the fact that your client had previously gone pro per on two prior cases. Couldn't the trial court have considered all of those factors in determining whether he knew what he was doing? Well, those factors could be considered, but it's also true that the court misinformed the appellant, stating that he was charged under Penal Code section 667B, when actually that's just a prefatory provision, which could be very confusing to a pro per, so he didn't not really understand the charges. But surely you're not suggesting that what we have to require of trial courts is a lesson in the substantive criminal law and criminal procedure. Almost, I guess, in Wamulki or in Arnold, didn't the district or the trial court took two hours? Going through all of the potential things that could happen, and we said you don't have to go that far. Well, perhaps you don't have to take two hours, but in this case, there was very little that was said to the defendant. And in fact, one of the most important things is that the court was aware that the defendant was misinformed about his possible sentence. And in fact... Is the argument that your client thought he could only get six years, but in fact he got nine? So is that why his waiver wasn't knowing and intelligent? That's one of the reasons, is that he was actually misinformed. That's the only reason I care about, okay? So instead of answering our question, when we ask you questions about what he was told in terms of the maximum sentence, you're going someplace else. And we want to know what you think about the fact that he was confused about what the range of sentence was, and what's your argument on that? Well, even if Wamulki doesn't require perfection, in this case, the defendant was obviously misled and confused, and he was not informed. And I believe that under Ferrara and Wamulki, at least the court needed to ensure itself that the defendant was not misinformed. And as I said, in this case, he was actually misinformed, and the court did nothing about it. Did anybody tell him prior to the time the court accepted the waiver what he was facing in terms of numbers of years in prison? I don't believe that was ever made clear to him. So the waiver was taken first, and then the judge said afterwards, well, the way I read it from looking at the thing, the judge says, so, Mr. Davis, you are now pro per, that is representing yourself. And your maximum sentence in this case, we're getting to the maximum sentence after the judge has already said he's a pro per, so that you understand it, which probably should have been done beforehand. This is second-degree burglary, Mr. McCart, I think it's nine years you're under the court, nine years in state prison. Good luck to you. Those are the orders the defendant, how did you get nine years? I didn't get them, that's what you're facing. And then they get into this business about, where it becomes clear that he doesn't know what the maximum sentence is, and then the court says, you are beginning to understand the dangers of representing yourself, because you don't even know what your possible sentence is. Now, isn't it pretty clear under Von Mulkey or Arnold or any of the other cases that he's entitled to know before the pro per decision is made what his sentence is in terms of maximum number of years? I totally agree with you, Your Honor, and like I said... I'm talking to your opponent, really not to you. It was kind of a rhetorical question. And the point is, even if Von Mulkey doesn't require a particular procedure, it does require that the waiver was intelligent and knowing, and obviously here the waiver was not knowing and was not intelligent. First question out of his mouth is, how did you get nine years? And the judge says, you don't even know your possible sentence, sir. I'll tell you what, we understand your argument very clearly. Why don't we hear from the other side, and then we'll give you an opportunity to respond. Is that okay? Yes, there's just one other point that subsequent Supreme Court decisions appear to have recognized Von Mulkey. So even if that was a plurality opinion, other courts have recognized it, as well as the Ninth Circuit opinions have also recognized it, and this was submitted in my 28-J letter. Thank you, Your Honor. May it please the Court, John Yang on behalf of the responding appellate. I think you see what my problem is. Sure. This record makes it pretty clear that he didn't know what his maximum sentence was, and the judge even says that, and the judge says it after the judge takes the pro per thing. I get the impression that this judge was irritated with this guy, and he was just giving, thank you? And they said, well, you're stuck now, and that's not really what this is all about. I mean, this isn't, to me, it doesn't represent a careful dealing with a person's constitutional rights. Well, maybe the judge was a little bit irritated, but I think that the test is whether the defendant made the waiver with his eyes open, that he knew what he was getting into. But the judge says, sir, you don't even know what your sentence is. I understand. I think that was a comment by the judge basically out of a little bit of irritation, but also he was still of the sentiment that the defendant shouldn't have gone pro per, but still the test is, you know, in light of the entire record, does the defendant have sufficient information in his mind to make a knowing and intelligent waiver? And that is the test. But don't all the cases make it pretty clear that a necessary component of that is an understanding of what the sentence could be? Well, Your Honor, I think that if this Court is talking about Von Moltke, then, you know, I would like to discuss about whether the fact that it is clearly established federal law or whether that is a mandatory or dictate as to, you know, that list that Von Moltke talked about. That list contains, among other things, you know, advising the defendant of all the possible defenses. And the one that's at issue in this case is the maximum potential punishment. Counsel pointed out that it's a plurality opinion, and I also like to point out that the dissent in that case did not necessarily agree with the phrase maximum potential penalty. As part of the requirement, it just said that the defendant in that case reasonably forecasted her sentence, which was four years, but actually her maximum penalty was the death penalty. So but that aside, Your Honor, I would like to get into analysis of whether it's that Von Moltke holding, that list. Not exactly the Von Moltke holding in general, but that list of things that we need to tell the defendant before the waiver, whether that's a dictate, a well-established dictate under federal law. And I would look at Feretta, which is a case that is right on point. We're talking about. Feretta really is a completely different issue, Counsel. You're a good enough lawyer to understand that. Well, Feretta talks about the way that's the case. That's the landmark case that talks about the defendant having a right to waive counsel. Yeah, but it doesn't get into the mechanics or the nuts and bolts of the whole thing. Well, certainly not. But it does say Von Moltke. It does. It does say Von Moltke in it. But not in this, not the Von Moltke list, not the list that we're talking about. It just cites it for the general proposition that it has to be intelligent and knowing. And in fact, I believe that an important Von Moltke into the into the issue. It doesn't cite that list. That's basically what I'm saying. And why I emphasize that list is because of Arnold of the United States, which is the Ninth Circuit case that I have supplied this court through the 28th J letter. And that is the case that talks about that list being a standard of perfection, something that sort of gives the court a rough guideline of what type of inquiry or type of scrutiny they should engage in before allowing the defendant to proceed in pro se. Now, what I'm saying is the proper standard really is. First of all, that language about knowing and intelligent and voluntary. But I think for it also clarifies it. It gives it gives courts a general sense of what they're looking for. That is, I think the specific language is whether he his choice was made with his eyes open and he knew what he was doing. Do you know what you're getting yourself into, basically? And I don't think that that particularly requires the exact specification of the maximum penalty to the defendant, Your Honor, because they tell him anything about penalty before they took the proper waiver. They talk about what is being charged to talk. They talk about the strike. They talk about the three prior prison terms. And they talk about the burglary charge. So all these three. But in terms of years, months, days, is there any discussion about that at all? Prior to the waiver, no. But that's the problem. And that is the problem. I will I will also supply other reasons why on the record as a whole that his waiver can be found to be intelligent and involuntary. But as as to the the the Florida issue, the court basically has to engage in sort of a sense of what this defendant needs in order to make an intelligent and voluntary waiver. And I don't think that that specifically requires a specific advisement as to the maximum penalty, because, first of all, I would like to use an example. Say, for example, a defendant is facing a maximum of 50 years. What if the court says 47, 45? Now, that's that wouldn't be exact. But in that circumstances, I could see how a court on appeal could uphold that, that that is a sufficient advisement as to what he is facing, because 50 and 47 is pretty it's very close. So basically, it's sort of giving the defendant a general grasp of what he's facing. Do you have any cases that so hold? No, I don't. But this is an argument that I'm making, Your Honor, that that if it's 50, for example, what difference does it make to the defendant? Close enough for constitutional rights. 47 to 50. Well, that's the issue in this case. That's well-established law, that we really need to give an exact amount. And so we're taking the position that that is not the case, that he just needs to be sufficiently apprised of the maximum penalty. And but the ultimate test is really the ultimate test is really not what the court said. The ultimate test is really what the defendant knew at the time. And from the record, we can see that that he didn't know that he was facing nine years. Well, the record more supports more of him knowing or thinking that the maximum sentence was probably seven years. His interpretation of the enhancement. Right. Provision was that I only get one extra year, even though I have three qualifying felonies. Right. And he is basically very knowledgeable in the sentencing laws of California, because what he was basically doing, he was trying to apply 654 to the three prior prison terms. The three, the 654 would then reduce the three prior prison terms to one year in his mind, he was thinking. So that would make it rather than nine years. It would be seven years. But but the fact that he's able to to say all this on the record and to argue all this on the record really shows his knowledge about the sentencing in this case. Let me ask you this question. What about the court's knowledge, though? Doesn't the court have to satisfy itself that the defendant knows what he's doing and that in knowing what he's doing, he knows what he's facing? Your Honor, I think that's that's another issue. But but I think here the inquiry and you can correct me if I'm wrong. I think the inquiry right now is. And that's the test that I've been reading in all the cases is really not what the court told or what the court thinks, but really about what the defendant knows or what the defendant is. If the defendant made a knowing and voluntary waiver, then the case must be upheld. That's basically the test. I know that the court should the court should basically satisfy himself. And maybe the court in this case could have done a better job. The court seems to have been sticking it to this guy. Well, I mean, I hate to keep reading this. You are beginning to understand the dangers of representing yourself. This is after he took the waiver. You're supposed to understand the dangers before he takes the waiver. And the judge says now that you've now I've taken the waiver. Now you're beginning to get the idea. You don't even know what your sentence is. I understand your honor. It's not good. I understand your honor's point. But really, we have to go back to what the test is. The test is whether the defendant knowingly and intelligently and voluntarily waived. And the judge's comment here is useless to us. And the judge says now you're beginning to understand. Well, not exactly. We have to, according to the cases in the Ninth Circuit, in this circuit, we look through the entire record, sort of pick up what we can know about this particular defendant when he made that waiver. What you're really saying is this was a very sophisticated defendant he knew and the judge was just playing cat and mouse with him here. Well, I really can't be too much of a mind reader as to the judge. I think he's a little bit irritated in that some of his statements were made out of frustration. Could be. But that's still not the point. The point is we have to go back to the test. What did the defendant know? What was in his mind? Was it a knowing and intelligent waiver? And then, so that's why we go back to the record and we pick up clues as to whether he. Is your argument from the transcript we can tell that the defendant knew that he was subject to some kind of a sentencing enhancement, but because he was wrong in his interpretation of the law and it was three years rather than one, that's good enough for purposes of assessing the fact that he understood the range of penalty. We're urging that that is a sufficient knowledge for him to know what he was getting into. The problem is if we were to write a rule such as you have urged us to adopt, then you create just chaos in trying to figure these things out and you generate an almost impossible burden of proof, notwithstanding what he said and what he did, what was really in his mind. That's why you have bright line rules on things like this. And one of the bright line rules is you tell him what he's facing and then you don't have this stuff. Your Honor. Well, you really don't have to tell him. And then we try to figure out what he knew. And actually inviting all kinds of hearings. Your Honor, I agree that the court in this case could have just basically told him that. I agree that the court could have done better. But we're under the Adipo standard and we look at the Supreme Court precedents. And what I'm saying is the Supreme Court precedent, as set forth in the Supreme Court and as construed by subsequent courts in the Ninth Circuit, say that we have to look at the record and see what the defendant knew. What you're saying is it's not clearly established that the judge had to have told him nine years. You're saying it's clearly established that it has to be a voluntary way. Voluntary and intelligent. What he knew. Right. Basically. And that is not, that's what the Court of Appeals was basically doing, trying its best to apply FRERETA and trying its best to apply clearly established law. And the court basically took note of the fact that he knew enough. He knew enough to know what he was getting into. And one of the important pieces of evidence as to this was that even after he was subsequently told of the nine years, he did not waver in his resolve. Now, we have a defendant here, and this is very important. We have a defendant here who actually was granted pro se status before. And then he asked for reinstatement. He knew how to ask for reinstatement of counsel. And so right after he knew about the nine years, and this is an active defendant. This is a defendant who follows motions actively, who makes cross-examinations vigorously. He could very well, if he, if that was what made a difference, he would have said, I want counsel back. He could have said, I want counsel back. You know, now that I know it's nine years instead of seven, I want counsel. But that is not the case. So that sort of tells us his failure to turn the clock back. We hold against him. No, no. Here's the problem I have with the court of appeals opinion. Although the trial court did not explicitly state that Petitioner faced a possible sentence of nine years before accepting Petitioner's waiver, given all of the information Petitioner had received, Petitioner would have understood that he potentially faced nine years. Where do you get that? I mean, they just say, well, even though he said, where did you get that? They say, well, he would have understood that he potentially faced nine years. And what's the support for that? Based on the fact that he had such sufficient knowledge of the law that he knew that basically he knew the burglary charge carried a high term of three years. He knew that the burglary charge could be doubled to be six years. And he knew that each prior prison term was one year by itself. Adding it all up, it could be nine years. That's what the court of appeals was basically saying. He knew all that from the subsequent proceeding. He knew from what he said on the hearing. But isn't that contradicted by him? You know, we're sort of beating this horse until it bleeds. But isn't that contradicted by what he said as soon as the prosecutor said nine years? He said, where did you get that? Your Honor, he made so many contradictory statements. In fact, in the subsequent hearing, he basically blurted out, is this a strike case? He blurted out, is this a strike case? But he knew that. Prior to that, he already told the court that he knew that it was a strike case. So this is a defendant who's just going back and forth. That's all you have to support. Petitioner would have understood that he potentially faced nine years, even though his first reaction to nine years was, where did you get that? And the judge says, you don't even know what your maximum sentence is. Well, you know, I would admit I'm the first. I'll be the first one to admit that that's troubling. But that's not the test. The test is whether the defendant knowingly and voluntarily waived his right to counsel. That is the test. And so we look at the record and we see how, really, seven years, nine years didn't make any difference to him. He wasn't going to proceed with counsel in any fashion. But at the time that he made the waiver, he knew sufficiently what he was getting into in order to make an intelligent waiver. Petitioner obviously knew prior to trial that his case was a strike case, exposing him to the possibility of a nine-year sentence. Okay. Is there anything else you have to say? Unless Your Honors have any other questions for me, I would submit. Thank you, counsel. Thank you. First of all, I'd like to point out that the defendant is not a sophisticated defendant. The record shows he had a ninth-grade education, and he did want to go pro per before, and it didn't work out. So obviously he had trouble with that. So he's not a very good pro per lawyer. No. And if there could be ineffectiveness of counsel, I think that would be reflected in the record. Well, that gives me the argument that he is ineffective as his own counsel. Yes. He gets convicted and he keeps going to prison. Right. I don't know. And the other thing is that there is a whole line of precedent, not just for Moltke, not just for Etta, but a whole line of precedent which shows that the defendant has to be informed about the nature of the charges and the possible penalties and the danger of self-representation. And even if in regards to a state habeas proceedings, there isn't necessarily the exact set procedure that you might have in a federal habeas proceedings, the point is there has to be a knowing and intelligent waiver. And the record clearly reflects that defendant was misinformed about a lot of things, and his waiver was not knowing and was not intelligent. The California Court of Appeals would disagree with you. The last thing the Court of Appeals said in its opinion was the defendant obviously knew he was looking at nine years before the trial started. Does that mean anything? I don't know why the California Court of Appeals reached that decision because he really — Isn't it just the court kept telling him after he made his waiver that it was going to be nine years and he kept arguing about it? Well, after he made the waiver, what difference does it make? The point is he should be informed at the time he makes his waiver. And — What about the fact that he just continued and the argument is, well, if he really was that confused, he could have said, well, under those circumstances, I want to change my — I don't want to be pro per anymore. Now that I understand that it's nine years, I don't want to be pro per anymore. I want a lawyer. Well, I think that's stressing it, Your Honor. The point is that at the time the waiver is made, and it's not just for the benefit of this defendant, but for the benefit of precedent, at the time the waiver is made, it should be knowing and intelligent. And in this case, the record reflects that at that time the waiver was not knowing and intelligent, and certainly one of the important aspects is what kind of penalty is he facing. If he's facing two months, that's quite different from 10 years, and he needs to know that. Thank you, counsel. We appreciate the help from both of you. The case, argued, is ordered submitted. Thank you, Your Honor.
judges: Trott, Tallman, Collins